J-S62026-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAMES BACON, | |
| Appellant | No. 2742 EDA 2013 |

Appeal from the Order Entered September 20, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0802121-2006

BEFORE:  ALLEN, OLSON AND OTT, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED DECEMBER 16, 2014**

Appellant, James Bacon, appeals from the order entered on September 20, 2013 denying relief on his first petition pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  Upon review, we affirm.

The PCRA court set forth the applicable factual and procedural history of this case as follows:

> On April 4, 2006, an arrest warrant was issued for [Appellant] in connection with a shooting on April 1, 2006 (herein, the April 2006 shooting).
>
> On April 19, 2006, Police Officer Jose Perez observed [Appellant] on 2600 Cecil B. Moore Avenue but was unable to arrest him.  On May 7, 2006, Officer Perez observed [Appellant] in the same location while on patrol with Officer James Taylor.  Officer Taylor exited the patrol vehicle and pursued [Appellant] on foot while Officer Perez proceeded to drive past [Appellant].  Once [Appellant] observed Officer Taylor pursuing him, [Appellant] began to run northbound on Bailey Street.  While still running from Officer Taylor, [Appellant] retrieved a gun from his backpack.  Officer

Perez radioed for backup and told the police dispatcher that he observed [Appellant] and that he was armed and dangerous. Officer Perez exited the patrol car to pursue [Appellant] on foot. [Appellant] then turned around and fired his gun while continuing to run. He then ran around the southeast corner of Bailey and Montgomery Avenue and waited. As Officer Perez turned the corner, [Appellant] fired a single shot that missed the officer. [Appellant's] gun then jammed and he fled once again, eluding arrest (herein, the May 2006 shooting). [Appellant] then turned himself in the next day, May 8, 2006.

Attorney Emily Mirsky from the Defender['s] Association of Philadelphia represented [Appellant] for the April 2006 shooting and the May 2006 shooting[, which were tried separately]. [Appellant] was acquitted by a jury of the April 2006 shooting. During [his subsequent] trial for the May 2006 shooting, [Appellant] advanced a misidentification theory through the eyewitness testimony of his neighbor, Raymond Jackson. At trial, Jackson testified that the shooter was not [Appellant]. Jackson's testimony was in direct conflict with the testimony of Officers Perez and Taylor, who both identified [Appellant] as the shooter. The jury for the May 2006 shooting found [Appellant] guilty of attempted murder, aggravated assault, and possession of an instrument of crime. [The trial court sentenced Appellant to an aggregated sentence of 15 to 30 years of incarceration. On appeal, this Court affirmed Appellant's judgment of sentence in January 2010. The Pennsylvania Supreme Court denied further review on December 29, 2010.]

[Appellant filed a timely *pro se* PCRA petition in March 2010.] On January 24, 2012, [appointed counsel] filed an amended [p]etition pursuant to the [PCRA]. [Appellant] claimed that Emily Mirsky ([Appellant's] trial counsel) was ineffective for failing to call [Appellant's] mother, Mary Fair, as an alibi witness; and (2) failing to call Janice Shappelle as an alibi witness. The [PCRA] court granted an evidentiary hearing concerning [Appellant's] two claims. The evidentiary hearing was held on April 12, 2013. [Appellant], Mary Fair, Janice Shappelle, and defense counsel testified at the hearing[.]

- 2 -

PCRA Court Opinion, 4/4/2014, at 1-3 (record citations and headings omitted). By order entered on September 20, 2013, the PCRA court dismissed Appellant's PCRA petition. This timely appeal resulted.[1]

On appeal, Appellant presents the following issues for our review:

1. Did the PCRA court err in determining that trial counsel was not ineffective for failing to call Janice [S]happelle[2] as an alibi witness when Ms. [S]happelle was willing and available to testify?

2. Did the PCRA court err in concluding that trial counsel was not ineffective for failing to call a second alibi witness, Mary Fair?

Appellant's Brief at 4.

Both of Appellant's issues allege, under the PCRA, that trial counsel was ineffective for failing to call witnesses at trial. Our standard of review is well-settled:

We review an order of the PCRA court to determine whether the record supports the findings of the PCRA court and whether its rulings are free from legal error. To be eligible for PCRA relief, a petitioner must plead and prove,

---

[1] Appellant filed a notice of appeal on September 20, 2013. On September 25, 2013, the PCRA court entered an order pursuant to Pa.R.A.P. 1925(b) directing Appellant to file a concise statement of errors complained of on appeal. Appellant complied timely on October 7, 2013. The PCRA court filed an opinion pursuant to Pa.R.A.P. 1925(a) on April 4, 2014.

[2] Throughout his brief, Appellant refers to Ms. Shappelle as Ms. Chappelle. Upon review of the record, the witness confirmed that she spells her name "S-H-A-P-P-E-L-L-E." N.T., 4/12/2013, at 28. Accordingly, for accuracy and consistency, we will refer to her as Ms. Shappelle throughout this memorandum.

by a preponderance of the evidence, that his conviction or sentence resulted from one or more of the reasons set forth in 42 Pa.C.S.A. § 9543(a)(2). In this case, Appellant alleges that his conviction and sentence resulted from ineffective assistance of counsel, as set forth at 42 Pa.C.S.A. § 9543(a)(2)(ii).

In order to obtain relief under the PCRA premised upon a claim that counsel was ineffective, a petitioner must establish [by] a preponderance of the evidence that counsel's ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. When considering such a claim, courts presume that counsel was effective, and place upon the appellant the burden of proving otherwise. Counsel cannot be found ineffective for failure to assert a baseless claim.

To succeed on a claim that counsel was ineffective, Appellant must demonstrate that: (1) the claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) counsel's ineffectiveness prejudiced him.

Furthermore:

to demonstrate prejudice, appellant must show there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. When it is clear the party asserting an ineffectiveness claim has failed to meet the prejudice prong of the ineffectiveness test, the claim may be dismissed on that basis alone, without a determination of whether the first two prongs have been met. Failure to meet any prong of the test will defeat an ineffectiveness claim. Counsel is not ineffective for failing to raise meritless claims.

[…] Where an appellant claims that counsel was ineffective for failing to call a particular witness, we require proof of that witness's availability to testify, as well an adequate assertion that the substance of the purported testimony would make a difference in the case.

With respect to such claims, our Court has explained that:

> the appellant must show: (1) that the witness existed; (2) that the witness was available; (3) that counsel was informed of the existence of the witness or should have known of the witness's existence; (4) that the witness was prepared to cooperate and would have testified on appellant's behalf; and (5) that the absence of the testimony prejudiced appellant.
>
> Thus, trial counsel will not be found ineffective for failing to investigate or call a witness unless there is some showing by the appellant that the witness's testimony would have been helpful to the defense. A failure to call a witness is not *per se* ineffective assistance of counsel for such decision usually involves matters of trial strategy.

*Commonwealth v. Michaud*, 70 A.3d 862, 867-868 (Pa. Super. 2013) (citations, quotations, and brackets omitted).

In his first issue presented, Appellant claims that Janice Shappelle was available as an alibi witness at trial, would have testified that Appellant was with her during the May 2006 shooting, and was made known to trial counsel prior to trial. Appellant's Brief at 8. He claims that the PCRA court erred in determining that the Defender's Association mistakenly listed Janice Shapiro, rather than Janice Shappelle, as a potential witness. *Id.* at 9. Further, Appellant claims that the PCRA court mischaracterized defense counsel's testimony that Ms. Shappelle was a potential witness in the April 2006 shooting, but not the May 2006 shooting. *Id.* at 10. Appellant also claims "that someone at [defense counsel's] office was told about Ms. Shappelle with regard to the matter presently at issue." *Id.* at 11.

Appellant claims he was prejudiced because another eyewitness testified at trial that Appellant was not the shooter, Appellant was not stopped at the scene, and there was no physical evidence tying Appellant to the shooting. *Id.* at 11-12.

The PCRA court determined that the witness was not made known to counsel regarding this particular crime. The PCRA court credited defense counsel's testimony that her trial notes indicated that the Defender's Association was told about a woman named Janice Shapiro, not Janice Shappelle. Trial Court Opinion, 4/4/2014, at 7. Although, it is undisputed that "the two names represent the same person[,]" the PCRA court also determined that Ms. "Shappelle's name came up as a potential alibi only in regards to the April 2006 shooting and not the May 2006 shooting[,]" the judgment of sentence that is the subject of this collateral challenge. *Id.* at 6. Defense counsel testified that Appellant and his mother told her that Kia Reese, another woman, was with Appellant at the time of the May 2006 shooting. *Id.* at 7. Thus, the PCRA court "found that there was no competent evidence that [Ms.] Shappelle was available and willing to testify at the trial for the May 2006 shooting, notwithstanding [Ms.] Shappelle's testimony that she would have been available to testify at trial but was waiting for a subpoena." *Id.* Moreover, the PCRA court found that Appellant was not prejudiced because there was overwhelming evidence to support his convictions, specifically "[t]he officers identified [Appellant] at the scene and were previously familiar with [Appellant's] appearance[;] Officer Perez []

- 6 -

identified [Appellant] by name when calling police dispatch." *Id.* (record citations omitted).

Viewing the evidence in the light most favorable to the Commonwealth, as our standard of review requires, we discern no abuse of discretion or error of law in denying relief under the PCRA. Upon review of the notes of testimony from the PCRA hearing, defense counsel testified that "Janice Shapiro or Shappelle was linked only to the first case[- the April 2006 shooting,]" but not the criminal matter at issue. N.T., 4/12/2013 at 55, 61. Defense counsel testified that either Appellant or his mother told her that another woman, named Kia Reese, was with Appellant at the time of the May 2006 shooting. *Id.* at 47. Defense counsel testified that "Kia was a constant name that was coming up" and counsel believed that she "talked to her multiple times." *Id.* at 50. Based upon all of the foregoing, we agree that Appellant failed to produce evidence that trial counsel knew of the existence of Ms. Shappelle in relation to the May 2006 shooting. Thus, we discern no abuse of discretion or error of law in dismissing Appellant's PCRA petition on this basis.

With regard to Appellant's second claim, he argues that counsel was ineffective for failing to call Mary Fair, his mother, at trial. *Id.* at 12. "Appellant's mother would have testified that she was on the telephone with her son when she saw the man who had shot at the police fleeing the scene." *Id.* Appellant claims that Ms. Fair was an available witness at trial. *Id.* Appellant asserts that trial counsel had no reasonable basis not to call

Ms. Fair at trial and he was prejudiced. *Id.* More specifically, Appellant avers that defense counsel conceded that "Ms. Fair was a witness for Appellant at a first attempted murder trial when Appellant was found not guilty and that Ms. Fair was a good witness." *Id.* at 13 (internal quotation omitted). Appellant argues it was an unreasonable strategy not to call Ms. Fair at trial because counsel "was afraid that Ms. Fair would mention that Appellant had an arrest warrant[]." *Id.* Appellant claims that he was prejudiced because had Ms. Fair testified, her testimony, plus the eyewitness' testimony as presented at trial, as well as Ms. Shappelle's proposed trial testimony, would have changed the outcome at trial. *Id.* at 15.

The PCRA court found that trial counsel had a reasonable strategy for not calling Ms. Fair and that there was otherwise no prejudice to Appellant. PCRA Court Opinion, 4/4/2014, at 8-9. Defense counsel chose not to use Appellant's mother as an alibi "because she regarded [that] alibi witness[] as weak or not solid enough[;]" "the best defense for the May 2006 shooting was based upon a misidentification theory, which was supported at trial by [eyewitness] testimony[;]" Ms. Fair's credibility was in question because of "previous failures to provide any information regarding [Appellant's] location to police when they had previously come to her home[;]" and, "defense counsel expressed her professional opinion that family members and girlfriends do not make good alibi witnesses because they are easily impeached due to their relationship with [Appellant]." *Id.* Moreover, the

PCRA court concluded that "[Appellant] was not prejudiced by the failure to call [Ms.] Fair as a witness due to the overwhelming evidence in support of [Appellant's] convictions." *Id.* at 9.

The certified record supports the PCRA court's finding. At the PCRA hearing, defense counsel testified that she was concerned about calling Ms. Fair as an alibi witness because:

> If [the jury] heard that [Appellant] was wanted for another attempted murder, that would have been a devastating piece of information. […] So [counsel] was worried that because of [Ms. Fair] wanting to be helpful and her talkative nature, that she would, that somehow she would open the door and somehow more than the [arrest] warrant would come out: the fact that [Appellant] was on the run for several weeks, that she knew where he was. There was a lot of damaging material. And again, it was a strategic decision.

N.T., 4/12/2013, at 60. Defense counsel also testified that the alibi witnesses that she spoke with gave statements that did not match up with the statements given by the eyewitness. *Id.* at 52. Thus, counsel strategized to "go with [her] witness" on a theory of misidentification, rather than an alibi defense. *Id.* Defense counsel testified that she believed "that alibi witnesses who are mothers" are "easier to impeach [] because they have connections to the defendant." *Id.* After careful review, we agree that trial counsel had a reasonable strategy in not calling Ms. Fair at trial.

Moreover, based upon our review of the evidence presented at trial, Officer Perez testified that he knew Appellant from patrolling the

neighborhood, that he was specifically looking for Appellant for a prior crime, and that he had photographs of Appellant in his possession when he saw Appellant. N.T., 11/5/2007, at 73-74. Officer Perez "recognized [Appellant] as soon as he saw the pictures." *Id.* at 75. Officer Perez first saw Appellant on a street corner on April 19, 2006 from a distance of 40-50 feet, but Appellant fled. *Id.* at 78-79. Officer Perez saw Appellant again on May 7, 2006, walking down the street. *Id.* at 80. Officer Perez still had the photographs of Appellant in his possession when he made eye contact with Appellant. *Id.* at 82. Officer Perez testified, without qualification, that he "knew it was him" because he had seen Appellant in person and he had seen the photographs. *Id.* at 83. Officer Perez and his partner, Officer Taylor, chased Appellant. *Id.* at 84-88. Officer Perez testified that Appellant took a firearm out of his backpack and "looked in [the officer's] direction, smiled at [him], and [] took a shot[.]" *Id.* at 89. Officer Perez testified that he was sure the shooter was Appellant. *Id.* at 105; N.T., 11/6/2007, at 22 ("[Appellant is] the person I chased. He's the person that shot at me."). Officer Taylor testified similarly, stating that he had a picture of Appellant in his hand when the officers first saw Appellant. N.T., 11/6/2007, at 33. Officer Taylor testified that Appellant was approximately 50 feet away when he saw Appellant shoot at Officer Perez. *Id.* at 37. Based on this positive identification evidence, we conclude that Appellant has not demonstrated

prejudice to support his ineffective assistance of counsel claims for failing to call witnesses.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/16/2014